## WILLIAM YINGLING *vs.* BENJAMIN KOHLHASS, Adm'r of CHRISTIAN KOHLHASS

Evidence tending to show a compromise or settlement by arbitrament and award, is not admissible under the plea of "Not indebted," pleaded under the Act of 1856, ch. 112: to allow such evidence to be admitted, the defence must be specially pleaded under that Act.

Proof by the defendant, that the note sued on was not seen by witness amongst the papers, or in the possession of the deceased, though he was the clerk of the deceased, and was familiar with, and knew all his papers, is irrelevant, and its rejection could do no injury to the defendant, as it tended rather to prove the loss of .the note.

A prayer, "that upon the pleadings, and all the evidence in the cause, the plaintiff is not entitled to recover," *because of several reasons assigned*, is not too general; the prayer must be read *distributively*, as if it had been repeated before each of the specific grounds, or objections, stated.

In an action by the payee against the maker, to recover on a lost note, even if under the issue of not indebted, pleaded under the Act of 1856, ch, 112, the defendant could give evidence that the note declared on was negotiable, still, the *onus probandi* to show its negotiability, lies on the defendant.

A negotiable note is one payable "*to order*, or "*bearer*," and it will not be negotiable unless these, or other words of the same legal effect, are found in the instrument.

In an action by the payee against the maker of a lost note, where the *nar.* does not describe the note as negotiable, prayers by the defendant that the plaintiff could not recover, because he had not proved whether it was negotiable or not, or whether negotiated for value or not, and that he could not recover at law on a lost negotiable note, there being no evidence that the note *was negotiable*, were properly rejected.

The plaintiff is entitled to recover, in *such an action*, on such a note, if he proves its execution, delivery, and amount, and that it is unpaid, and lost and destroyed, and cannot be brought into court to be delivered to the defendant: and it is not material to prove either the date of the note or from what date it bore interest.

APPEAL from the Circuit Court for Frederick County.

Action, brought June 29th, 1857, by the appellee against the appellant. The declaration in its first count declares upon a promissory note for $150, dated January 17th, 1848, by which the defendant promised to pay to the plaintiff's intestate, in his lifetime, said sum with interest, and that said sum is due with interest from January 17th, 1854. The second and third

counts are for money lent and advanced, and on an account stated. Pleas:—1st, "never promised as alleged," 2nd, "is not and never was indebted as alleged," to the first, second and third counts.

*1st Exception:* Having offered evidence of letters of admin istration granted to him December 11th, 1854, the plaintiff proved by *Cunningham*, that after the death of C. Kohlhass, defendant told witness he was indebted to the intestate in his life time on a note, but he would not pay it, unless the note was produced; by *Delashmutt*, that on the appointment of plaintiff as administrator, witness was appointed agent of the plaintiff with full power to attend to, and conduct the entire administration of the estate, and so acted till November 17th, instant, when he ceased to be agent, and released all claims for commissions or otherwise; that before the appointment of plaintiff as administrator, witness had a conversation with defendant, who said he owed the intestate a note of $150, and was desirous to pay the same, that he had borrowed the money from deceased and given his note for it; that after the appoint- ment of plaintiff and witness as his agent, he had another con- versation with defendant, who told him the date of the note was January 17th, 1848, and that he had paid interest on it to the intestate up to January 17th, 1854, and that he was willing and wished to pay it; witness told him there was a similar case of the loss of a certificate of deposit for $200, which the intestate had in the Frederick Town Savings Institution, and he did not think defendant ought to pay the note until that institution paid this certificate, to which defendant replied, he would do whatever the Savings Institution would do; that C. Kohlhass died in the latter part of November or the first of December 1854, and some ten days or two weeks after his death, witness and plaintiff, and one Leather, went to the house deceased had occupied, and which had not been occupi- ed by any one since his death, and there searched carefully amongst all the papers of the deceased, and could not find the note of the defendant; that witness published a notice in the

newspapers signed by himself as agent, a copy of which was offered in evidence. (This notice, after describing the note as drawn by the defendant, and payable to C. Kohlhass, and the certificate states that they "have been lost, mislaid, stolen or destroyed," and forewarns all persons "from receiving or negotiating said note and said certificate or either of them," as pay-ment thereof had been stopped,) and that said note has never been found or seen by witness either before or since said search and notice.

The defendant on cross-examination of this witness, asked him whether he had stated all that was said between witness and defendant in the conversation last stated by witness? and witness replied, that at the same time and in the same conversation, witness told defendant, that he, witness, advised him to go to Frederick and take the advice of counsel, whether he ought to pay said amount, and that he, witness, would go with him to see counsel for an opinion, and that he, witness, would abide by whatever opinion counsel might give, and the defendant agreed thereto; witness was agent of the plaintiff and acting as such in attending to said administration at the time this conversation occurred. Defendant's counsel then asked the witness whether he and defendant did, in pursuance of said agreement, go to Frederick, and whether they together saw counsel for an opinion, according to said agreement, and if yea, who, and whether said counsel did give an opinion, and if yea, what opinion he gave to defendant and witness together? The plaintiff objected to this question and to the admission of the testimony offered, and the court, (NELSON, J.,) sustained the objection and refused to allow the question to be put and answered, and the testimony to be given, and to this ruling the defendant excepted.

*2nd Exception:* The plaintiff then further proved by *Leather*, that the day before C. Kohlhass died, witness went to his house and found him senseless and speechless, his general health before had been good, he died the next evening; on the morning before he died, his brother, William Kohlhass, gave

Yingling *vs.* Kohlhass.

witness some of Christian's papers, and on the night of his death, gave witness some more papers, and on the next day gave witness all the rest of the books and papers of deceased, which we could find in the house; ten days or two weeks after intestate's death, witness and Delashmutt searched the papers and the house for a note of the defendant for $150, and could not find it; said William gave witness all the papers of deceased, so far as witness knows; does not know whether said William gave witness all the papers that he found; witness was with William searching for papers; he might have searched when witness was not with him; witness afterwards gave all the papers that had been given to him, to Delashmutt the agent of the plaintiff. On cross-examination this witness proved, that deceased was a bachelor, and had lived alone since witness knew him, some ten or twelve years; that a year or so before his death, witness was talking with intestate, and the latter said he was not going to leave a cent that he was worth to his brothers—not one cent. The plaintiff then proved by Delashmutt, that on the day of the appraisement, he found two or three dollars in money under the steps, and a shot bag with eight or nine hundred coppers behind a bed, under rafters.

The defendant then offered to prove by *Harding*, that witness was in the habit of acting as clerk for the intestate in his lifetime, and of handling and examining all the papers, notes and evidences of debt, which the intestate had in his possession in his lifetime, and was familiar with, and knew all the papers which deceased had for a considerable period prior to his death, and that witness did not, at any time, see amongst said papers, or otherwise, in possession of intestate, a note payable to intestate for $150, executed by the defendant. The plaintiff objected to the admissibility of this evidence, and the court sustained the objection and refused to permit it to go to the jury, to this ruling the defendant excepted.

*3rd Exception:* The defendant prayed the court to instruct the jury, that upon the pleadings and all the evidence in the cause, the plaintiff is not entitled to recover in this action:

1st. Because he has not offered any sufficient evidence from which the jury can find the defendant executed and delivered to the intestate, the promissory note mentioned in the first count of the declaration.

2nd. Because there is no evidence in the cause from which the jury can find for the plaintiff, on any of the other counts in the declaration.

3rd. Because no sufficient evidence has been offered from which the jury can find the contents of the note sought to be recovered on in the first count of the declaration.

4th. Because the plaintiff has offered no sufficient evidence of the existence and contents of the note sought to be recovered on in this action, to lay a foundation for proof of its loss.

5th. Because no sufficient evidence has been offered of the loss of the note, for which he seeks to recover, to entitle the plaintiff to recover in this action.

6th. Because there is no evidence in the cause from which the jury can find, that the note for which the plaintiff seeks to recover, was a promissory note, or whether the same was negotiable or unnegotiable; whether the same was payable to the intestate or to another person, and endorsed by such other person to the intestate; whether the same was payable to the order of the payee mentioned therein, or to bearer, or whether it was under seal or a single bill.

7th. Because no sufficient evidence has been offered from which the jury can find, that the note for which the plaintiff seeks to recover, was not duly assigned and transferred by the intestate in his life time, to a *bona fide* assignee for value received, and that the said note is not now outstanding in the hands of a *bona fide* holder thereof.

This prayer the court refused, and to this ruling the defendant excepted.

*4th Exception:* The defendant asked the court to instruct the jury, that even if they should find from all the evidence in the cause, that the defendant did execute and deliver to the plaintiff's intestate in his lifetime, a promissory note for $150,

payable to said intestate or to his order, and that said note was subsequently lost by said intestate or by the plaintiff since his death, the plaintiff is not entitled to recover in this action, because an action at law cannot be maintained to recover the amount of a promissory note, payable to order, which has been lost and is not produced at the trial of the cause. This prayer the court refused, and to this ruling the defendant excepted.

*5th Exception:* The defendant further asked the court to instruct the jury, that there is no sufficient evidence in the cause from which they can find that the defendant did execute and deliver to the plaintiff's intestate in his lifetime, a promissory note payable to said intestate or to his order, or a promissory note not negotiable, and that said note was lost by said intestate or by the plaintiff since his death, and therefore the plaintiff is not entitled to recover in this action.

*6th Exception:* The plaintiff prayed the court to instruct the jury, upon the pleadings and evidence in this case, that if they shall believe from all the evidence taken together, that the defendant made and executed the note in question of $150, dated January 17th, 1848, payable to C. Kohlhass, the plaintiff's intestate, for money loaned to the defendant by said Kohlhass, deceased, in his lifetime, and that the defendant paid to the said Kohlhass the interest on said note, or sum of money up to January 17th, 1854, and if the jury shall further believe from all the evidence, that the said note is unpaid, and lost and destroyed, and cannot be brought into this court to be delivered to the defendant, that then the plaintiff is entitled to recover. This prayer the court granted, and to this ruling the defendant excepted.

*7th Exception:* The defendant then further prayed the court to instruct the jury, that there is no sufficient evidence in this cause from which the jury can find, that the defendant on the 17th of January 1848, executed and delivered to the plaintiff's intestate, a promissory note for $150, bearing date on that day, and bearing interest from that date. This prayer the court

refused, and to this ruling the defendant excepted, and the verdict and judgment being against him, appealed.

The cause was argued before BOWIE, C. J., BARTOL and GOLDSBOROUGH, J.

*Oliver Miller*, for the appellant.

1st. As to rulings excluding evidence:—The evidence of Delashmutt, as to the agreement to refer the case to the opinion of counsel, and what the decision was, was a matter clearly within the scope of the agency of the witness, for he was the agent of the plaintiff, with full power to attend to and conduct the *entire administration* of the estate. If the plaintiff, as such administrator, could have made such an agreement with the defendant, he cannot deny the acts of his agent, whom he had placed in his stead in conducting the administration. The testimony of Harding was also admissible for the purpose of showing, 1st, that the alleged note never existed, and as rebutting evidence to that. which had been previously offered by the plaintiff to show that it did at one time exist; and 2nd, that if it ever did exist, the intestate had in his lifetime destroyed it with the *purpose of cancelling the debt*, and thus carying out his avowed purpose of leaving nothing to his brothers. It is therefore submitted, that the rulings in the first and second exceptions were erroneous.

2nd. The appellant's prayers in the *third, fifth* and *seventh* exceptions should have been granted. The prayer in the third exception asserts that the plaintiff is not entitled to recover for the seven reasons therein specified. This prayer is not liable to the objection of being too general; the words, "that upon the pleadings and all the evidence in the cause, the plaintiff is not entitled to recover," do not constitute the prayer; these words are to be prefixed to each of the reasons stated. 5 *Md. Rep.*, 540, *Tyson vs. Shueey.* The *fifth, sixth* and *seventh* reasons are especially relied on. To enable a plaintiff to recover if he can do so *at law*, (which is denied,) upon a *lost note*, clear proof—the clearest possible proof—in such a case.

as this, must be given of three things, viz: 1st, that the note once existed; 2nd, that it has *been lost;* and 3rd, its contents, that is whether *negotiable* or not—its substantial parts. The reason of this is obvious, and the strength of the proof required is not diminished by the fact that the plaintiff is an administrator, suing for a note supposed to have belonged to his intestate. If the note was *negotiable*, the presumption arising from the fact that it was not found amongst the papers of the intestate, is, that he had passed it away. This is the *only* proof of loss in this case, proof that rather shows negotiation and transfer than *loss*. The fact, that the note could not be found among the papers of the deceased, is accounted for upon the hypothesis, 1st, that it had been passed away to a *bona fide* holder for value, by the intestate in his lifetime; or 2nd, that he had *destroyed* it with the intent to cancel the debt, so that his brothers might not receive the benefit of it. This is not the *loss* which the law requires—*loss*, in its legal sense, means a parting with property by the owner *against his wish and desire*—it does not mean *voluntary destruction*, nor *transfer* or *voluntary* parting with ownership. If this note was either *negotiated* or *destroyed with intent to cancel the debt*, it was not *lost* in the legal sense of the term, and there must be proof negativing both suppositions before secondary evidence of its contents could be let in. If the appellant should be sued by a holder of this note, he could not plead this judgment and payment thereof in bar to such an action. The proof of *loss*, therefore, is entirely insufficient, and there is no proof whatever of the other *material facts* stated in these prayers. In support of these views see *Story on Bills*, sec. 447; 4 *Wash. C. C. Rep.*, 253, 255, *Martin vs. U. S. Bank;* 2 *Wash. C. C. Rep.*, 172, *Bullet vs. Bank of Penn.;* 9 *Wheat.*, 596, 597, *Renner vs. Bank of Columbia;* 4 *Scammon*, 333, *Rogers vs. Miller.*

3rd. The appellant's prayer in the fourth exception presents the question, whether an action *at law* can be maintained on a *lost negotiable note*. The authorities are clear that it cannot. *Story on Bills*, secs. 447, 448, 449. *Story on Prom. Notes,*

*secs.* 446 to 451. 7 *Barn. & Cress.,* 90, *Hansard vs. Robinson.* 6 *Ves.,* 812, *Ex-parte Greenway, (Sumner's Ed.,)* and notes. 2 *Wend.,* 550, *Kirby vs. Sisson.* 2 *Camp.,* 211, *Pierson vs. Hutchinson.* There is sufficient evidence in the case from which the jury could have found the note to have been *negotiable,* the notice published in the papers and offered in evidence by the plaintiff, himself, forewarns the public from *negotiating* this note, and from this alone the jury could have found it to have been a negotiable instrument.

4th. The appellee's prayer in the sixth exception was erroneous, if the views already taken are correct. But it is also liable to another objection. It asserts the plaintiff's right *to recover,* if the jury find the note therein described was executed, &c., and that it was unpaid, *lost* and *destroyed,* and cannot be brought into court to be delivered up. This prayer concluding thus to the right of recovery, assumes the truth of all the other evidence in the case, and all inferences legitimately deducible from it. Now there is evidence from which the jury might legitimately infer, that if the note was *destroyed,* it was destroyed for the very purpose of cancelling the *debt,* and if they so found the plaintiff clearly could not recover. For this reason the prayer was clearly erroneous. 1 *Gill,* 222, *Leopard vs. Canal Co.* 2 *Gill,* 150, *Byer vs. Etnyre.* 3 *Gill,* 356, *Riarl vs. Wilhelm,* 7 *Md. Rep.,* 352, *McTavish vs. Carroll.*

*Jos. M. Palmer,* for the appellee.

In arguing this case I shall confine myself to the rules of pleading as established by the Act of 1856, ch. 112, and the evidence applicable to such rules. By sec. 44 of that Act, the general issue shall not be used, and by sec. 47, all defences, except a direct denial of facts alleged, must be pleaded specially. This action was brought to recover the sum of $150, for money loaned, for which a note had been given, dated January 17th, 1848. The declaration contained three counts, one on the note and the others the common counts. The defend-

ant pleaded, that he never promised, and is not now and never was indebted as alleged. The only question of fact, therefore, presented by the pleadings are, did the defendant promise, and was he indebted?

1st. The ruling in the first exception was correct. The question propounded to the witness Delashmutt on cross-examination, was irrelevant and in no way pertinent to the issues in the case. All evidence to be admissible must correspond with the allegations, and be confined to the points in issue. 1 *Greenlf's Ev.*, secs., 49 to 52. 6 *G. & J.*, 481, *Goodhand vs. Benton.* Evidence to be admissible must be pertinent to the issue made by the pleadings. 5 *H. & J.*, 448, *Law vs. Scott.* 2 *H. & G.*, 82, *Birckhead vs. Saunders.* Ibid., 182, *Ferguson vs. Tucker.* 3 *G. & J.*, 389, *Turner vs. Walker.* 8 *G. & J.*, 111, *Clarke vs. Darnall.* Ibid., 248, *Steam Navigation Co., vs. Dandridge.*

2nd. The evidence of Harding in the second exception was manifestly inadmissible for any purpose. It was irrelevant and not pertinent to the issue in the case. The only issue made by the pleadings was, whether the defendant promised, and was indebted? It was proved by two witnesses that he admitted his indebtedness and promised to pay the money, and how could the fact that this witness never saw the note amongst the papers of the intestate, tend to prove that the defendant never promised and never was indebted. Whether he saw the note or not is merely a negative collateral fact, incapable of affording any reasonable presumption for the consideration of the jury, that the defendant did not promise and was not indebted. It is a well settled rule of evidence, that all collateral facts, or those which are incapable of affording any reasonable presumption, or inference, as to the principal fact or matter in dispute, are inadmissible. The reason is very obvious to every legal mind:—it would be calculated to mislead and embarrass the jury. 1 *Greenlf's Ev.*, sec. 52. 7 *Md. Rep.*, 236, *Lee, et al., vs. Tinges.* The irrelevancy of this evidence is clearly shown by the authorities cited on

the first point:—it could not in any manner tend to prove the issue in the case:—and it was too light and inconclusive to have been left to the jury. 2 *H. & G.*, 189, *Ferguson vs. Tucker.*

3rd. There was no error in the rejection of the appellant's prayer in the third exception. This prayer was too general under the Act of 1825, ch. 117. 6 *Md. Rep.*, 407, *Hatton vs. McClish.* 5 *Md. Rep.*, 541, *Tyson vs. Shueey.* 6 *Md. Rep.*, 525, *Warner vs. Hardy.* If one or more of several propositions contained in the same prayer be incorrect, though the others be right, there is no error in the refusal to grant the prayer in its entirety. 4 *Md. Rep.*, 498, *Marshall vs. Haney.* A prayer good in part and bad in part, is properly rejected. 5 *Md. Rep.*, 433, *Stewart vs. Spedden.* 6 *Md. Rep.*, 88, *Preston vs. Leighton.* If a prayer is defective in any particular it is properly rejected. 7 *Md. Rep.*, 297, *Railroad Co., vs. Resley.* The court was asked by this prayer to instruct the jury, the plaintiff was not entitled to recover, and assigned seven reasons why, none of which contained a legal proposition, but call upon the court to decide that there is no *sufficient* evidence in the case to entitle the plaintiff to recover. There is certainly evidence tending to prove the issues made by the pleadings, the insufficiency of which is for the jury, not the court. The granting of this prayer would have invaded the province of the jury. It is for the court to decide whether there be any *legally* sufficient evidence, and for the jury to judge of the weight and sufficiency, *in fact*, of the evidence. Here the evidence not only *tends* to prove all the facts in issue, but is conclusive evidence. 1 *H. & G.*, 109, *Morris vs. Brickley.* Ibid., 252, *Sanderson vs. Marks.* In 2 *G. & J.*, 403, *Davis vs. Barney*, the court say:—"The general rule being, that where there is any legal admissible evidence tending to prove the issue, the effect of that evidence is *solely* for the consideration of the jury." 3 *Gill*, 350, 355, *Morgan vs. Bitzenberger.* 16 *Md. Rep.*, 445, *Maltby vs. Railroad Co.* 7 *G. & J.*, 39, 40, *Cole vs. Hebb.* The evi-

Yingling *vs.* Kohlhass.

dence is positive that the defendant admitted that he gave the note, that it was dated January 17th, 1848, and that he had paid interest on it up to January 17th, 1854. It may perhaps be necessary to make a passing remark upon the sixth and seventh reasons inserted in this prayer, the sixth in particular, for it is, indeed, a legal anomaly. Can it be pretended that the plaintiff, in order to recover, was bound to prove the strange set of facts embraced in this branch of the prayer? But neither this nor the seventh reason has any sort of application to the pleadings and evidence in the case, and the court was clearly right in refusing the prayer. The same may also be said of the rejection of the prayer in the seventh exception.

4th. The only other question is, can the plaintiff, upon the pleadings and evidence, recover? This, from the authorities, seems free from doubt or difficulty. It is well settled both in England and in this country, that an action upon a note *not negotiable*, can be sustained in a court of law, without producing the note on the trial, if it is proved to be lost and cannot be produced. No legal reason can be assigned why the law should not be so. The law as applicable to negotiable instruments may, perhaps, be different, but the question here is, upon a note *not negotiable*, as described in the declaration, and for authorities on this point, see *Story on Prom. Notes, secs.* 106, 107; *Chitty on Bills, (Ed. of* 1842,) 268, and *note;* 10 *Adol. & Ellis.*, 616, *Wain vs. Bailey;* 4 *Bing.*, 273, *Rolt. vs. Watson;* 3 *Cowen*, 303, *Rowley vs. Ball;* 10 *Johns.*, 104, *Pintard vs. Tackington;* 3 *Wend.*, 344, *McNair vs. Gilbert;* 2 *G. & J.*, 508, *Glenn vs. Smith;* 78 *Eng. C. L. Rep.*, 608, *Charnley vs. Grundy.* The case last cited, was decided in England in 1854, and is directly in point. Here the action is on a note not negotiable, and the plea is, no promise, and not indebted; and the only question of fact is, did the defendant promise, and was he indebted? The defendant, to defeat the action, assumes that the note was negotiable, and that the plaintiff's only remedy was in a court of equity. Now if, in point of fact, the note was negotiable and in the hands of a

*bona fide* indorsee, (which is not true, and of which there is no evidence,) and this would have been a good defence to the action, it should have been specially pleaded, and the *onus* of proving it affirmatively would have have been upon the defendant. He could not prove the note was negotiable as a defence to the action under the pleadings in the case, if he had offered such evidence:—sec. 47, of the Act of 1856, ch. 112, is decisive of this point, and it is one of the very points decided in *Charnley vs. Grundy.* Indeed, before the Act of 1856, if the defendant set up such a defence to an action to recover money due on a lost note, the *onus probandi,* was on the defendant to prove it. This is according to the common sense of the rule of evidence, that the defendant who asserts facts in defence of an action, must prove them, as the authorities above cited show. But an action at law can be sustained even upon a *negotiable* note, if the plaintiff can prove it lost and actually destroyed. The reason is very obvious, for the defendant could not be called on for payment a second time if the note was destroyed, and the actual destruction of the note may, like other facts, be presumed from facts and circumstances. 8 *Conn.,* 431, *Swift vs. Stevens.* 2 *Gallison,* 351, *Peabody vs. Denton.* In this case the question, whether the note was lost and destroyed, was submitted to the jury, and they found that it was. If I am right in these views, the ruling of the court in the sixth exception was correct, which disposes of the whole case under the pleadings and evidence, and it becomes unnecessary, therefore, to notice the fourth and fifth exceptions, as the rulings of the court were manifestly correct in both.

GOLDSBOROUGH, J., delivered the opinion of this court :

This was an action brought by the appellee against the appellant, on the 29th day of June 1857, in the Circuit court for Frederick county, to recover the sum of $150, and the interest thereon.

The plaintiff below, by his *nar.,* declared upon a promissory

Yingling vs. Kohlhass.

note given to plaintiff's intestate, to secure the payment of the above sum; also for money lent and advanced, and in the third count for a similar sum on an account stated.

The defendant pleaded, 1st, that he never promised as alleged; 2nd, to the first count, that he is not, and never was indebted as alleged; 3rd, to the 2nd and 3rd counts, that he is not now, and never was indebted as alleged.

At the trial, the plaintiff failing to produce the note declared on, undertook to account for its absence, by giving evidence of its loss, and that diligent search had been made for it but it could not be found. He then offered the testimony of Benjamin A. Cunningham and Arthur Delashmutt, mentioned in the record, to prove the defendant's admissions, both for the purpose of establishing the contents of the note in question and to sustain the second count in his *nar*.

In the progress of the cause, seven bills of exception were taken to the rulings of the court. Two of them present questions in relation to the admissibility of evidence offered on the part of the defendant; the third, fourth, fifth and seventh, upon the refusal of the court to grant the defendant's prayers, and the sixth, upon the prayer of the plaintiff granted by the court.

In reviewing the rulings of the court below, as indicated by the several exceptions, we regard its action in excluding the evidence contained in the first and second exception as correct. The evidence in the first exception was not relevant to either of the issues. It might have been admissible under another state of pleading: but, under the Act of 1856, ch. 112, if the defendant means to rely upon an arbitrament and award, it is necessary to plead it specially.

The evidence in the second exception was also irrelevant and properly rejected. It could not tend to prove any of the defences upon which the defendant relied. It rather went to prove the loss of the note, and its rejection could work no possible injury to the defendant.

Before proceeding to consider the questions presented by the third exception, it is proper to notice an objection made by the

21    v.18

appellee's counsel, to the form of the prayer, on the ground that it is too general under the Act of 1825, ch. 117.

If the instruction asked had been, simply, that "upon the pleadings and all the evidence in the cause, the plaintiff is not entitled to recover in this action," it would have been obnoxious to the objection made. But this general prayer is followed by particular specifications of the points upon which the opinion of the court was asked, and the prayer must be read distributively as if it had been repeated before each of the specific grounds or objections stated. This form of prayer is a sufficient compliance with the Act of 1825. In the case of *Tyson vs. Shueey, 5 Md. Rep.*, 544, a prayer similar in form was brought before this court, and no objection to it on that ground was suggested by the counsel or the court. In this case we have examined the several grounds presented in the prayer, and are of opinion it was properly rejected. In the argument of the cause the appellant's counsel abandoned all the grounds alleged, except the sixth and seventh. In our opinion they are equally unavailing. They raise the question as to the character of the note, and assume that there was evidence tending to show it was negotiable; we shall notice this point in our consideration of the fourth and and fifth exceptions.

It may be, that under the Act of 1856, ch. 112, the defendant might give in evidence, under the general issue, that the note declared on was a negotiable instrument, about which, however, we express no opinion, yet, conceding it to be so, the *onus probandi* would lie upon the defendant.

In this case we find no evidence to sustain the idea, that the note in question was a negotiable instrument, and therefore think the Circuit court acted correctly in disregarding the sixth and seventh reasons in the third exception, and also in rejecting the defendant's prayers in the fourth and fifth exceptions.

A negotiable note is one payable to order or bearer, "and it will not be negotiable unless these, or other words, of the same legal effect, are found in the instrument," see *Story on Prom. Notes, sec.* 9.

The note is not described in the declaration as negotiable; the admissions of the defendant, given in evidence, represent it as simply payable to Christian Kohlhass, and the published notice of its loss, upon which the defendant chiefly relies for proof of its negotiability, described it in the same manner.

We approve of the ruling of the Circuit court in granting the prayer of the plaintiff contained in the sixth exception.

The evidence selected by the plaintiff, including the reference to the pleadings in the cause, was, in our opinion, legally sufficient to enable the plaintiff to recover.

The prayer of the defendant in the seventh exception was properly rejected.

There was evidence submitted to the jury from which they might find both the execution and delivery of the note. The admissions of the defendant clearly established both, and it was not material to find either the date of the note, or from what date it bore interest, the defendant having, also, admitted that it was due and unpaid before the institution of the suit.

*Judgment affirmed.*

(Decided January 9th, 1862.)